A. G. McKNIGHT v. GEORGE L. BROZICH AND OTHERS.[1]

July 3, 1925.

No. 24, 620.

**Foreclosure of mortgage not void because made without first obtaining leave of court.**

The foreclosure sale under a paramount mortgage of real estate, which at the time being is subject to a receivership for the benefit of general creditors of the owner, is not void simply because the foreclosure was instituted and the sale had without first obtaining leave of the court appointing the receiver.

See Receivers, 34 Cyc. p. 226.

[1]Reported in 204 N. W. 917.

Action in the district court for Lake county to have certain mortgage foreclosure sales adjudged void and for other relief. The case was tried before Magney, J., who ordered judgment in favor of plaintiff. Defendant partners in the firm of Grahek Bros. and M. F. Skala jointly and separately appealed from the judgment and from an order denying their motion for a new trial. Reversed.

*Jenswold, Jenswold & Dahle,* for appellants.

*A. G. McKnight* and *Roderick Dunn,* for respondent.

STONE, J.

Action by the receiver of an insolvent domestic corporation to set aside the foreclosures, by advertisement, of two mortgages. Plaintiff prevailed below and the defendant purchasers at the foreclosure sales, who are also the mortgagees, appeal from the order denying their motion for a new trial and also from the judgment. The property in question is a small but relatively valuable part of a larger Lake county tract known as "The Reserve of White Iron Lake Villas," the whole of which was formerly owned by defendant George L. Brozich.

While he was the owner, he mortgaged it to defendant Skala to secure payment of a $5,000 loan. This is the first of the two mortgages now involved. The other is for $3,000 by the same mortgagors on the same premises to defendants, Grahek Brothers, as mortgagees.

In April, 1921, Brozich sold to the Superior National Forest Outing Company, the corporation of which plaintiff is receiver, a small portion of the reserve. Apparently it was a strip of beach property relatively valuable, and to the outing company important, because of the access it furnished to the lake. This sale was consummated by a warranty deed on October 14, 1921, which was filed for record on April 1, 1922. In that deed, the *grantors,* Brozich and wife, agreed to pay both of the mortgages. That covenant makes it immaterial that the Grahek mortgage was not filed for record until after the outing company had paid for and went

into possession of the property bought from Brozich, for it purchased with knowledge of that encumbrance.

A receiver was appointed for the outing company on March 14, 1923. The debts secured by the mortgages were then long past due. Apparently there was no hope of collection from Brozich. Without notice, other than by the publication required by statute, both mortgages were foreclosed by advertisement. The entire property, including the tract sold to the outing company and that retained by Brozich, was sold on June 22, 1923, more than three months after the receiver was appointed. Defendant Skala purchased at the sale under his mortgage and Grahek Brothers at that under theirs. The sheriff's certificates issued accordingly. This action was not commenced until February, 1924.

Respondent's argument is that where property is in custodia legis, its possession by a receiver or any officer of the court in whose custody it is, without leave of that court, cannot be interfered with by a hostile act such as a sale under execution or foreclosure. The doctrine prevailed below to a drastic degree, for the foreclosure sales were considered void ab initio. If all such sales, because of that temporary and limited control, were void, many supposedly capable counsel for receivers and attaching or judgment creditors have blundered and a serious question arises, not only as to the heretofore unquestioned efficacy of the power of sale in a mortgage, but also as to titles which depend upon foreclosures which took place, without leave of court, pending receiverships or a levy on behalf of a junior creditor.

Respondent takes position and the decision below is based mainly upon Wiswall v. Sampson, 14 How. 52, 14 L. ed. 322. The case has been much cited and followed. 4 Rose's Notes, R. ed. 585; see notes, 1 L. R. A. (N. S.) 1055, and 71 Am. St. 352. But to apply it as was done below, we must ingraft upon a conventional Minnesota real estate mortgage, its power of sale and its enforcement through foreclosure by action or advertisement, a condition not heretofore thought of, to-wit: that if, perchance subsequent to the mortgage, the property happens to undergo attachment, execution

or receivership, a foreclosure cannot be had, during that temporary court control, without leave of court, *the failure of the latter being fatal*. Our decision is to the contrary.

Wiswall v. Sampson involved the title to Alabama real estate as between judgment creditors of Ticknor, who had fraudulently conveyed it to Day. Wiswall's was the junior judgment in point of time, but his lien became senior to the others through a suit in chancery whereby he attacked, successfully, the conveyance to Day. In that suit (the first of a trio of which Wiswall v. Sampson was the last), Waring was appointed a receiver to take and hold the property pending the action and to dispose of it under the decree, which finally subjected it to Wiswall's judgment as a first lien and directed its sale accordingly.

In the meantime, the holders of two judgments antedating Wiswall's, ignoring his suit and receivership, caused the property to be sold under execution to Dargan. He demanded possession from Waring, the receiver. Being refused, he proceeded by bill in equity (the second of the three suits), praying "that the receiver be withdrawn as to the premises in question, and that he be placed in possession thereof," and for general relief. Upon hearing,

"The chancellor was of opinion that the property in question could not have been sold under execution until the deed from Ticknor to Day was set aside, and previous to this, the executions on which the petitioner relies to sustain his purchase acquired no lien; that Wiswall acquired a lien by filing his bill, which was strengthened by the decree vacating the deed from Ticknor to Day, and appointing a receiver; that this decree placed the property in such a situation that it could not have been levied on; consequently the sale on which petitioner relies is a nullity."

On appeal the decision was affirmed. Dargan v. Waring, 11 Ala. 988, 46 Am. Dec. 234. The conclusion that Wiswall's judgment, originally subordinate, had become paramount, is explained by the statement that the neglect of the holders of the senior judgments "to sue out executions from term to term, after the return of the originals, if it did not give to the execution in favor of Wiswall

the superior lien, yet when connected with the filing of the bill, it had that effect. This, we think, results not only from the plain language of the statutes * * * but from the repeated judicial expositions they have received * * *. Between creditor and creditor, it is not the first judgment, but the first execution that gives the preference. * * * Wiswall then, by the course he has pursued, cannot stand in a less favorable position, than if he had caused a levy and sale to be made; but his rights are precisely the same, and his superior diligence gives him a preference of the judgment creditors, under whose executions the petitioner (Dargan) purchased."

We are now in a position, perhaps, to understand and apply Wiswall v. Sampson, the third and last suit to grow out of the controversy. After the decision in Dargan v. Waring, Sampson, a lessee of Dargan, brought an ejectment in the United States Circuit Court and there prevailed, so Wiswall became the plaintiff in error in Wiswall v. Sampson. His writ of error procured a reversal, upon the precise and narrow ground, as we read the opinion, that "while the estate is in the custody of the court, *as a fund to abide the result of a suit pending*, no sale of the property can take place either on execution or otherwise, without the leave of the court for that purpose. And *upon this ground*, we hold that the sale by the marshal (to Dargan) on the two judgments was illegal and void, and passed no title to the purchaser." (Italics are ours.)

Dargan v. Waring was considered controlling on the question of title. It was referred to as "holding, as we hold in this case, that the sale (to Dargan) was illegal and void, having been made while the estate was in the possession and safe keeping of the Court of Chancery * * * The question is one depending very much upon the local law of Alabama, and the judgment, therefore, in the matter, by the highest court of the State, is entitled to the highest respect."

No other holding was possible for, as said in the review of Wiswall v. Sampson in Petaluma Savings Bank v. Superior Court, 111 Cal. 488, 501, 44 Pac. 177, 181: .

"The fund, in other words, was the creation of the court appointing the receiver, and was necessarily subject to its disposition, to be applied to the satisfaction of the claims of such creditors only as could show a right to come in and share in the distribution. To hold, in such a case, that the execution sale passed a title superior to that of the receiver * * * would have been to hold that a creditor by prior judgment may stand by while a junior creditor at his sole expense and risk uncovers assets of the debtor, and then step in and reap the entire benefit, which is neither equity nor law. The decision in that case, therefore, lends no support to the claim asserted here, and the general expressions in the opinion of the court, which may seem to contenance it, must be limited in their effect by reference to the facts of the case under consideration."

Thus we see that the receiver in Wiswall v. Sampson was *not* a general receiver for the benefit of all creditors or to wind up a corporation or other business and distribute its assets. On the contrary, he was appointed for the special purpose of taking over real property in the nature of "a fund to abide the result of a suit pending" and which, in that very suit, was decreed to be sold for the benefit of Wiswall, whose rights, in Dargan v. Waring, had been determined *superior* to those of the very judgment creditors who caused to be made the void execution sale to Dargan.

There is, therefore, no real basis for the argument that the decision in Wiswall v. Sampson determined the law to be that *all* sales made, even upon abundant, paramount legal right, of property at the time being under the temporary control of a general receiver, are void or even voidable, if made without leave of court.

Aside from all of that, there is some reason, historically and logically, for holding that a sale without leave, but under a paramount lien and otherwise unobjectionable, of property subject to a receivership, ordinarily has no other effect than to subject the party responsible to punishment for contempt. It is not clear that Lord Chancellor Eldon went farther in Angel v. Smith, 9 Ves. 335, a decision the doctrine of which seems to have been put on the way to undue extension by the dictum concerning it in Wiswall v. Samp-

son. Discussing the two cases, it was said for the Court of Appeals of New York in Chautuaque County Bank v. Risley, 19 N. Y. 369, 75 Am. Dec. 347.

"I see nothing even to suggest a doubt of the validity of a title acquired by sale under a judgment, which is a legal lien upon the land sold prior and paramount to the title or possession of a receiver. It may be that the creditor should ask leave of the Court of Chancery before he proceeds to sell, or that the purchaser acquiring the title should make a like application before he brings his ejectment. If, however, he fails to do so, the question is merely whether the court will consider him in contempt and punish him accordingly. The sale itself is but the assertion of a legal right, and it cannot be illegal and void on the ground that the leave of an equitable tribunal is not first asked and obtained. It may be that the case of Wiswall v. Sampson, in the Supreme Court of the United States (14 How. 52), goes to the extent of laying down a different doctrine. If so, we are constrained to say that we cannot follow that decision."

As aptly observed in Petaluma Savings Bank v. Superior Court, supra, the problem in Wiswall v. Sampson was "not whether there was a contempt, but whether the title passed, and no title passed, for the reason that the fund belonged to the court that had created it, for the benefit of the creditor who had by his suit removed the impediments preventing the levy of any execution." See also Mulcahey v. Strauss, 151 Ill. 70 (82), 37 N. E. 702, 704, citing other authorities, there said to "criticize and decline to follow" Wiswall v. Sampson. For the reasons indicated, we do not consider that decision open to criticism when confined to its proper limits. We do not concur in the view that its holding is a blanket condemnation of all hostile sales of property subject to a receivership made without leave of court, if they are in the exercise of a clear, legal right, paramount to those represented by the receiver. That is this case.

The precise question seems not to have been passed upon by this court, at least counsel assure us that such is the case. Section

9178, G. S. 1923, provides that "any receiver, * * * may be sued on account of any of his acts or transactions in carrying on the business connected with the property in his charge without prior leave of court." Without reference to any statute, it was held in Leuthold v. Young, 32 Minn. 122, 19 N. W. 652, that the omission to obtain leave of court to sue a receiver was not ground for a demurrer to the complaint. The court, speaking through Mr. Chief Justice Gilfillan, said that while the omission to procure such leave was contempt, it was not a ground for demurrer and, quoting from Daniell (1 Ch. Pr. 311), "The omission to obtain such sanction is not a ground upon which a defendant to the suit can object to its proceeding." See also Irwin v. McKechnie, 58 Minn. 145, 59 N. W. 987, 26 L. R. A. 218, 49 Am. St. 495, holding that receivers of a railroad, appointed by a Federal court, were subject to garnishment, but making it clear that executory process would not issue for that "would interfere with the control of the property in the custody of the federal court."

Along that line, Albany City Bank v. Schermerhorn, 9 Paige (N. Y.) 372, is in point. Therein it was said:

"Certainly it was no contempt to levy upon the real estate of Schermerhorn, under a judgment against him, and to sell the same to the highest bidder; as that could not disturb the possession of the receiver, even if the tenants had all attorned to him. For the purchaser at such sale, after the expiration of the time allowed for redemption, would of course have the right to ask this court to give him the possession of the land, if the judgment under which he purchased was prior in point of time to the filing of the complainants' bills. And if such purchaser attempted to divest the possession of the receiver without permission of the court, he alone would be guilty of the contempt; and not the sheriffs, who had merely sold the interest of the judgment debtor in the real estate, subject to all just claims of the receiver or any other persons thereon."

That language indicates the necessity, which sometimes has been overlooked, of keeping distinct the possible result of contempt and

the impossible result of invalidity, from a sale under superior right of property subject to a receivership, the only irregularity being the failure to obtain leave.

There is nothing in First Trust Co. v. Baylor, 1 F. (2d) 24, tending to the contrary. There it was held "under the broad provisions of section 2 of the Bankruptcy Act" that if a mortgage creditor of a bankrupt, without consent of the bankruptcy court, commences a proceeding in the state court to foreclose his lien which will interfere with orderly administration by the trustee, he may be suitably restrained. That is a very different situation from the one presented here, for the argument of respondent finds no such statutory basis and asks, not the temporary restraint of a threatened foreclosure, but a nullification of one that is accomplished.

Without further discussion, we hold that the appointment of a general receiver for the assets of a debtor places no jurisdictional obstacle in the way of the power of sale in a prior mortgage. That is subject, of course, to the equities of any given case. For example, the owner of property purchased subject to mortgages by a prior owner, who has agreed to pay the debt thereby secured, may be in a position to compel one or more of the mortgagees to marshal their securities. There may be in such an owner the right, in the event of foreclosure, to compel sales of the property in separate tracts in the inverse order of alienation. If there was any such right here, no timely attempt was made to assert it and the purpose of this action, commenced seven months or more afterwards, to nullify the foreclosure sale, is without justification in law or equity.

For respondent, reference has been made to other supposed defects in the foreclosures. They are not supported by the findings of fact. We are not overlooking a conclusion of law, misplaced in the findings, that the power of attorney to foreclose "given by defendant M. F. Skala, was not made according to law and was otherwise illegally executed." Counsel for respondent cite no evidence supporting that conclusion. For appellant, evidence is referred to which indicates that it has no basis and we so hold.

The order and judgment appealed from are reversed and the case remanded for further proceedings not inconsistent herewith.