HANCOCK–NELSON MERCANTILE
COMPANY, INC., et al., Petitioners,

v.

Ronald WEISMAN, Respondent.

No. CX–83–1767.

Court of Appeals of Minnesota.

Dec. 7, 1983.

Sidney P. Abramson, Richard B. Allyn, Minneapolis, for petitioners.

Frank R. Berman, Minneapolis, for respondent.

Heard, considered and decided by POPOVICH, C.J., and PARKER and WOZNIAK, JJ.

## OPINION

POPOVICH, Chief Judge.

Application for a writ of prohibition pursuant to Civil Appellate Procedure Rule 120 to restrain the entry of the order of Judge Crane Winton of the Hennepin County District Court dated November 9, 1983 and stayed to November 11, 1983 to permit this application. At oral argument the parties agreed to a stay until this Court acted. Judge Winton's order found probable cause to believe the petitioners were in criminal contempt by violating Minn.Stat. Chapter 588 and had violated the court's order appointing a receiver to operate a corporation in which the parties were stockholders. He referred the case to the Hennepin County Attorney for investigation and such further action as might be deemed appropriate. A writ will not be granted and the petition is denied.

## FACTS

Petitioner Farmhouse Foods Corporation (Farmhouse) is a Wisconsin corporation engaged in the business of wholesaling grocery goods. Petitioner Hancock-Nelson Mercantile Company (Hancock) located in St. Paul, Minnesota, is a division of Farmhouse. In September of 1982, Farmhouse and respondent R. Weisman formed petitioner R. Weisman Company, Inc. (the Company) a Minnesota corporation located in St. Paul. It is a wholesale distributor of dry grocery goods servicing small retailers. Most of the merchandise sold by the Company is supplied to it by Hancock. From November of 1982 through August 13, 1983, respondent was a stockholder, director, president and general manager of the Company.

In March of 1983, the Company applied for and obtained from Norwest Bank Metro South a $350,000 credit line, payable on demand. The credit line was secured by inventory in the Company warehouse and was personally guaranteed by the respondent. Thereafter, the parties corporate relationship became disputed.

In August of 1983, Farmhouse notified respondent of a shareholders' and directors' meeting for the purpose of electing new directors and officers. Upon receiving notice of the meeting, respondent commenced action and on August 12, moved for a temporary injunction enjoining the petitioners from holding the meeting. The motion was denied by order of Hennepin County District Judge Eugene Minenko. At the August 13 meeting respondent R. Weisman was purportedly removed as director and president of the Company. Richard McElderry, an employee of Farmhouse, was purportedly elected president.

On September 2, 1983, respondent moved to enjoin the actions taken at the August 13 meeting and, in the alternative, sought appointment of a receiver for the Company.

Judge Winton denied the motion for an injunction but ordered appointment of a receiver. In pertinent part, Judge Winton's order of September 2, 1983 stated:

1. The Court finding that an exigency exists, does hereby appoint as a receiver of R. Weisman Company, a Minnesota corporation, Byron Frank, to serve until further order of the Court.

2. Said receiver shall exercise all powers authorized by law and the Court does hereby order a further hearing to determine specific powers of the receiver before the judge assigned to this case.

\* \* \* \* \* \*

7. The receiver shall operate the business and make all necessary day-to-day business decisions, until his responsibilities are defined by further order of this Court.

8. This case is referred to the Chief Judge for assignment.

Contrary to Judge Winton's recommendation, Chief Judge Patrick Fitzgerald on September 14, 1983 denied a motion to assign the matter to a specific judge.

On October 11, 1983, the Company executed and filed a financing statement in favor of Hancock under Article 9 of the Uniform Commercial Code with the Secretary of State. Through execution of this statement, Hancock obtained a security interest on "all inventory which is sold or delivered". Notice was provided to the bank after the filing.

The Uniform Commercial Code financing statement form was signed on behalf of the Company by its "president," Richard McElderry. The Company did not obtain the receiver's signature nor was he notified of it until October 13, 1983. At the hearing the receiver indicated he would not have signed the financing agreement.

On October 12, the bank demanded payment of $85,500 the amount of money still owing on the Company's line of credit. The amount, however, was paid from the Company's account with the bank thus affecting the liquidity of the receivership, and the Company became insolvent.

On November 4, 1983, respondent brought a motion before Judge Winton seeking to have all the petitioners found in civil and criminal contempt for entering into the financing statement. At the same hearing, Byron Frank, the operating receiver moved to be named as liquidating receiver. Judge Winton found probable cause to believe petitioners committed acts of criminal contempt by violating Minn.Stat. Chapter 588. He referred the matter to the county attorney for investigation and appropriate action.

Petitioners now seek a writ of prohibition to prevent the Hennepin County District Court from entering the order and from proceeding any further with the action for criminal contempt.

## ISSUES

1. Should a writ of prohibition be issued to restrain a court for finding probable cause to believe its order appointing a receiver was violated and referring the matter to the county attorney for investigation and such action as may be deemed appropriate?

2. Whether there is probable cause to believe criminal contempt occurred for willfully violating an order of the Court where the order does not specifically prohibit entering into a financing statement without consent of an operating receiver?

## ANALYSIS

Before a writ of prohibition may issue three essential elements must be shown to exist: (1) the court, officer or person against whom it is issued must be about to exercise judicial or quasi-judicial power; (2) the exercise of such power must be unauthorized by law; and (3) the exercise of such power will result in injury for which there is no other adequate remedy at law. *State v. Hartman,* 261 Minn. 314, 112 N.W.2d 340 (1961); *Bellows v. Ericson,* 233 Minn. 320, 46 N.W.2d 654 (1951); *Nemo v. Hotel and Restaurant Employees' Local No. 556,* 227 Minn. 263, 35 N.W.2d 337 (1948).

As the underlying order of Judge Winton has been stayed to permit hearing on the petition, the first requirement has been met.

Petitioners argue that the second requirement is met because the underlying order of Judge Winton appointing the receiver is so vague and indefinite as to make willful disobedience of that order impossible, citing, *Mr. Steak, Inc. v. Sandquist Steaks, Inc.,* 309 Minn. 408, 245 N.W.2d 837 (1976), where the Minnesota Supreme Court outlined the specificity required for a finding of civil contempt:

In addressing the limits on a trial judge's exercise of civil contempt powers, we stated that one essential prerequisite is that the prior decree or order of a court sought to be enforced by contempt must clearly define the acts to be performed by the alleged contemnor.

*Id.* at 411, 245 N.W.2d at 838.

Minnesota Statutes 588.20 CRIMINAL CONTEMPT provides:

Every person who shall commit a contempt of court, of any one of the following kinds, shall be guilty of a misdemeanor:

(1) Disorderly, contemptuous, or insolent behavior, committed during the sitting of the court, in its immediate view and presence, and directly tending to interrupt its proceedings, or to impair the respect due to its authority;

(2) Behavior of like character in the presence of a referee, while actually engaged in a trial or hearing, pursuant to an order of court, or in the presence of a jury while actually sitting for the trial of a case, or upon an inquest or other proceeding authorized by law;

(3) Breach of the peace, noise, or other disturbance directly tending to interrupt the proceedings of a court, jury, or referee;

(4) *Willful disobedience to the lawful process or other mandate of a court;*

(5) Resistance willfully offered to its lawful process or other mandate;

(6) Contumacious and unlawful refusal to be sworn as a witness, or, after being sworn, to answer any legal and proper interrogatory;

(7) Publication of a false or grossly inaccurate report of its proceedings.

No person shall be punished as herein provided for publishing a true, full, and fair report of a trial, argument, decision, or other proceeding had in court. (Emphasis added.)

Petitioners argue that, in order to find them in contempt of the order, the requirement of clarity would require the Court to have stated with specificity that no one other than the receiver might enter into a security agreement.

▮ We hold that, under the facts of this case, such specificity is not required as a matter of law. The receiver was charged with operating the business and making all necessary day-to-day business decisions of the Company. A necessary implication in that charge is the power and duty to execute or approve financing statements or any other decision affecting the liquidity or solvency of the Company. It is within the discretion of the court to authorize a receiver to continue the business of a corporation temporarily. *Sibley County Bank v. Crescent Milling Co.,* 161 Minn. 360, 201 N.W. 618 (1925). A receiver's powers are defined by the orders of the court and include authority as may reasonably or necessarily be implied for such orders. *Sutton v. Schnack,* 224 Iowa 251, 275 N.W. 870 (1937).

In *Sibley County Bank, supra,* the Minnesota Supreme Court said:

From the record it plainly appears that the only idea in the receiver operating the business was to better keep the plant active and incidentally aid in the sale thereof. It was obviously the intention of the court to operate the business but temporarily. When a receiver of a private corporation is appointed the court may authorize him to continue the business temporarily. 1 Clark, Receivers, § 552. This is within the discretion of the court. Section 556. *The power of the receiver to incur obligations incident*

*to such operation necessarily follows.* (Emphasis added.)

161 Minn. p. 362, 201 N.W. 618.

The operation of the business being the province of the receiver, the officers had no authority to act without his prior consent.

■ A writ of prohibition will not issue to stop a court from proceeding with a contempt hearing. In *Brown v. Brown,* 173 Minn. 623, 217 N.W. 494 (1928), in violation of a court order a wife removed a child from the jurisdiction of the state. The court ordered a contempt hearing and a writ to stop it was sought. The court held:

> That the district court has jurisdiction of both the person and the subject matter and also *jurisdiction to determine the questions* presented or to be presented is beyond question. A writ of prohibition issues to a lower court *only* when the court is exceeding its jurisdiction. Here the court is acting within its jurisdiction, and there is no ground for the writ. The *court has not yet decided whether the relator should be held in contempt. When it does, if the decision is not justified by the facts, the remedy is by appeal.* (Emphasis supplied.)

173 Minn. at 624, 217 N.W. 494.

■ Further, the remedy of an appeal is an adequate one. If the lower court is wrong a reversal on appeal is a complete remedy. The Petitioners may even win their contempt trial or the county attorney may not even prosecute.

Petitioners claim irreparable injury because the finding of probable cause might require reporting under the Securities Exchange Act of 1934 by Farmhouse and that disclosure of the pending contempt proceeding would have a damaging effect. This is speculative. It is difficult for this Court to see any difference between these parties and any other person, private or corporate, that might be in a similar circumstance facing a misdemeanor charge.

In *State v. Young,* 44 Minn. 76, 46 N.W. 204 (1890) the Supreme Court held that writ of prohibition cannot be issued to stop a contempt where the court is acting within its jurisdiction:

> Where an action or proceeding is pending in a court which has full jurisdiction over it, that jurisdiction covers all orders that are proper to be made in the action, *and includes the power to try parties charged with contempt for disobedience of such orders.* If the order disobeyed had been appealed from, and proceedings on it stayed, it might be error in the court to adjudge the party guilty of contempt in doing what the order forbade; but the appeal and stay would not go to the jurisdiction of the court to try the question of contempt. As the writ of prohibition issues only to keep courts within their proper jurisdiction, *it would not lie, in such a case, to prevent the court trying the charge of contempt. The party's remedy, if convicted, is by appeal.* (Emphasis supplied.)

44 Minn. at 81, 46 N.W. 204.

Although prohibition has traditionally been used to question jurisdiction, in recent cases it has been used to restrain the enforcement of orders entered in abuse of the lower court's discretion. The cases stress that it is limited to instances where there is no speedy or adequate remedy available. *See, e.g., Wasmund v. Nunamaker,* 277 Minn. 52, 151 N.W.2d 577 (1967) (discovery); *Thermorama v. Shiller,* 271 Minn. 79, 135 N.W.2d 43 (1965) (discovery); *Ginsberg v. Williams,* 270 Minn. 474, 135 N.W.2d 213 (1965) (new trial); *Weidel v. Plummer,* 243 Minn. 476, 68 N.W.2d 245 (1955) (temporary award of child custody); *State ex rel. Hierl v. District Court,* 237 Minn. 456, 54 N.W.2d 5 (1952) (consolidation); *State ex rel. Stenstrom v. Wilson,* 234 Minn. 570, 48 N.W.2d 513 (1951) (continuance).

■ Despite this broadening of the use of prohibition, we find no abuse of discretion in the trial court's interpretation of its own order in this matter.

Petitioners further argue that they cannot be held in contempt for violating the order with respect to the receivership. It is petitioner's position that no one could be in contempt of that order because they could not understand the purpose and import of the receivership. In effect petitioners want

this Court to prematurely rule on the merits of the matter.

■ The assets and all interests in the assets are not only in the possession of the receiver but are also in the possession and custody of the Court. The landmark case regarding the nature of the receivership is *Wiswall v. Sampson,* 55 U.S. (14 How.) 52, 14 L.Ed. 322 (1852). The Supreme Court of the United States said:

> When a receiver has been appointed, his possession is that of the Court and any attempt to disturb it without the leave of the Court first obtained, will be a contempt on the part of the person making it.

*Id.* at 64.

In *Ex parte Tyler,* 149 U.S. 164, 13 S.Ct. 785, 37 L.Ed. 689 (1893), the Supreme Court of the United States reiterated its holding in *Wiswall*:

> No rule is better settled than that when a court has appointed a receiver, his possession is the possession of the court, for the benefit of the parties to the suit and all concerned, and cannot be disturbed without the leave of the court, and that if any person without leave, intentionally interferes with such possession, he necessarily commits a contempt of court, and is liable to punishment therefor.

*Id.* at 181, 13 S.Ct. at 789.

The *Wiswall* doctrine has been cited by the Minnesota Supreme Court. In *McKnight v. Brozich,* 164 Minn. 90, 204 N.W. 917 (1925), the issue presented was whether a mortgage foreclosure sale of assets owned by a corporation subject of a receivership could be voided because a receiver did not join in the transfer. The holding of the Court was that the sale could

not be voided. The Court cited the *Wiswall* doctrine and held that at least on the facts presented in *McKnight* the sale could not be upset. Instead, the Court held that the remedy in such an instance is contempt stating:

> Aside from all of that, there is some reason, historically and logically, for holding that a sale without leave, but under a paramount lien and otherwise unobjectionable, of property subject to a receivership, ordinarily has no *other effect than to subject the party responsible to punishment for contempt.* (Emphasis supplied.)

*Id.* at 95, 204 N.W. 917.

### DECISION

The petitioners have not proved the basic elements necessary for a writ of prohibition. Instead they have appealed merely to the equity views of this Court. Distasteful as defending a criminal contempt charge may be, under facts such as these, this court will not second guess the trial judge's determination that the matter should be reviewed by the county attorney. The parties were represented by counsel. All knew of the receiver's appointment and authority. The trial court had reason to find probable cause that prior permission to execute the financing statement should have been sought. Here the county attorney must still investigate and then take appropriate action since the trial court merely found probable cause to believe a violation of the court's order and Minn.Stat. Chapter 588 had occurred.

The petition is denied.