**In the Matter of the WELFARE OF N.W.**

**No. CO–86–1629.**

Court of Appeals of Minnesota.

May 12, 1987.

Ronald L. Moersch, Northfield, for appellant father.

Stephen R. Ecker, Faribault, for respondent N.W.

Meredith A. Erickson, Faribault, for respondent Rice County Social Services.

Gary L. Voegele, Faribault, for respondent mother.

Sonja J. Peterson, Faribault, for Guardian Ad Litem.

Considered and decided by CRIPPEN, P.J., and WOZNIAK, and MULALLY*, JJ., with oral argument waived.

## OPINION

CRIPPEN, Judge.

This appeal concerns the right of a parent in a child neglect case to be heard on a dispositional recommendation submitted to the trial court. The child's father appeals from the court's dispositional order, claiming his right to due process was violated when the court failed to allow him to respond to information contained in a report submitted by the county attorney's office. His appeal also challenges the sufficiency of findings and evidence to support the trial court's dispositional orders. We reverse and remand.

## FACTS

In November 1985, a petition was filed in Rice County alleging that two and a half year old N.W. was a neglected and dependent child. Following a trial in April 1986,

the court found that the child was neglected and dependent. Under a temporary dispositional plan, the court ordered that the child remain in the custody of the Rice County Social Services Department, for foster home care. The temporary plan granted supervised visitation rights to N.W.'s parents, appellant and his wife, until a full dispositional hearing could be held on June 16, 1986.

The court's adjudication of neglect was based on evidence that the child was without proper parental care. See Minn.Stat. § 260.015, subd. 10(b), (c), (d) (1986). The dependency adjudication was based on evidence that N.W.'s parents were unable to provide adequate care. See id., subd. 6(b), (d). In making its findings, the court discussed the testimony of Associate Professor Sharon Satterfield, a child psychiatrist and director of the University of Minnesota's Human Sexuality Program. The record shows that Dr. Satterfield had worked with hundreds of sexually abused children in the preceding 24 years, including 15 years since she earned a degree in psychiatry. She evaluated the child using a standard play technique involving dolls. Satterfield testified that the child's response was consistent with someone who had been sexually abused. The court noted Satterfield's belief that appellant had sexually abused his daughter. The court found:

> There is no way a young child, such as N., would relate these incidents unless she had actually experienced them. She must have played with a male penis, must actually have seen it and played with it to be able to relate to a specific incident.

The court found that appellant had encouraged the child to touch his penis and buttocks.

The trial court held hearings on June 16 and August 19, 1986, to determine a dispositional plan.[1] The court made two disposi-

---

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

1. Statutes and rules contemplate a predisposition study and a hearing on the topic of a final disposition. The trial court may order predis-

position investigations into a child's personal and family history and environment. Minn. Stat. § 260.151, subd. 1 (1986); see also Minn.R. P.Juv.Ct. 62.03, subd. 1(a). Juvenile court rules 62.04 and 62.05 direct trial courts to hold dispositional hearings and to make dispositional or-

tional decisions affecting appellant.[2] First, at the June 16 hearing, the court altered the temporary plan then in effect and orally called for the suspension of all of appellant's visitation rights with his daughter until he completed a treatment program for sexual abusers. The court stated at the hearing:

> Mr. W., it's the order of this Court, absolutely no visitation between you and * * [N.W.] until we have another hearing in this matter. I'm going to force you to do something. I don't think someone who is victimizing children should have any visitation rights, if you can't behave yourself; absolutely no right to those children.

Two months later, immediately after the dispositional hearing on August 19, 1986, this order was confirmed in writing. The court's second dispositional decision was issued on August 28, 1986, rejecting appellant's requested treatment program at the Institute of Psychological Therapies (IPT) and ordering appellant to enter and complete a treatment program for sexual offenders at the Alpha House in Minneapolis.[3] The procedural events leading to these orders create the issues on this appeal.

Appellant had not submitted to any treatment before the June 16 hearing, in part because he disagreed with a penile stimulation test to be used in the course of completing his evaluation at the University of Minnesota's Human Sexuality Program; appellant questioned the stimulation technique on religious grounds. At the June 16 hearing, he asked the court to allow him to be evaluated and treated by Catherine Hoeckle, whom he referred to as a Christian psychologist. No one objected to this evaluation, which the court then ordered.

On August 19, 1986, the court heard additional evidence regarding a dispositional plan. The evidence concerning appellant related principally to a proper treatment program, and touched incidentally on his visitation rights. A social worker from the county's Social Services Department presented her recommendations for dealing

---

ders containing written findings and setting forth a dispositional plan that states why the best interests of the child are served by the disposition, what alternative dispositions were recommended and why those recommendations were not ordered.

2. This appeal concerns only the dispositional plan as it relates to appellant. During the pendency of this appeal, the child's mother completed the conditions of the court's dispositional plan as it affected her. She moved the trial court to return the child to her care. At a hearing on January 20, 1987, the trial court reviewed the disposition and ordered return of the child to her mother's home. Appellant, however, was not given notice of the hearing, and he petitioned this court for a writ of prohibition to prevent the child's return home. By our order (C4–87–154, dated February 10, 1987), we noted that appellant had a right to notice of the review hearing, Minn.R.P.Juv.Ct. 62.07, subd. 3, and that the hearing could not have been lawfully held in appellant's absence unless he was served with proper notice and chose not to attend. *See* Minn.R.P.Juv.Ct. 42.02. We denied the petition for a writ, however, because appellant failed to show he had suffered an injury for which there was no adequate legal remedy, *see Hancock-Nelson Mercantile Co., Inc. v. Weisman,* 340 N.W.2d 866, 868 (Minn.Ct.App. 1983), noting that appellant could treat the change as an informal modification (Minn.R.P.

Juv.Ct. 62.06) and request a formal hearing to review the trial court's modified disposition. Minn.R.P.Juv.Ct. 62.07, subd. 1.

3. Pursuant to Minn.Stat. § 260.191, subd. 1b(6), if the court finds that a child is a victim of domestic child abuse, it may order the abusing party to participate in treatment or counseling services. Domestic child abuse means "subjection of a minor family or household member by an adult family or household member to any act which constitutes a violation of sections 609.321 to 609.324, 609.342, 609.343, 609.344, 609.345, or 617.246." Minn.Stat. § 260.015, subd. 24(2) (1986).

The trial court found that appellant had encouraged his daughter to touch his intimate parts, which evidently constitutes an attempt to violate section 609.343, subd. 1(a):

> A person who engages in sexual contact with another person is guilty of criminal sexual conduct in the second degree if * * *:
> (a) the complainant is under 13 years of age and the actor is more than 36 months older than the complainant. * * * *

"Sexual contact," for purposes of section 609.-343, subd. 1(a) includes:

> (ii) the touching by the complainant of the actor's * * * intimate parts effected by coercion or the use of a position of authority, or by inducement if the complainant is under 13 years of age * * *.

Minn.Stat. § 609.341, subd. 11(a)(ii) (1986).

with the child and her mother, but her report and testimony omitted any information or recommendation for the father and his relationship with the child. The guardian ad litem, who did not testify, recommended there be no contact between appellant and the child until he successfully completed a minimum of six months' treatment. The guardian ad litem offered no evidence in support of her recommendation.

The only other testimony before the court came from two expert witnesses, who stated opinions favoring supervised visitation or limited supervised visitation between the father and daughter. Dr. Ralph Underwager testified to the importance of restoring contact between the child and her father, stating that the best interests of the child are served by a speedy, but secure, restoration of the relationship between the child and the biological parent. According to the record, Dr. Underwager, who is director of the IPT in Minneapolis, received his Ph.D. in adult clinical psychology from the University of Minnesota, and in the past 20 years has provided treatment for hundreds of victims of child sexual abuse.

Underwager told the court that the goal of all therapy is to increase the acceptance of personal responsibility. He testified that the treatment at IPT is based on "learning process" therapy which involves instruction in appropriate behavior. The techniques used at IPT include anxiety and stress management training programs; family, marital, and sexual therapy; and individual and group therapy. Underwager is currently treating four sex offenders.

Underwager observed that because of appellant's strong religious convictions the program at IPT is particularly suited for him. He reported that 95 percent of the mental health professionals in this country disavow religious beliefs, and that these professionals would have difficulty relating to appellant's conversion experience. Underwager, who is also ordained as clergy by a major church denomination, testified that the staff at IPT recognizes and accepts the values of a person's spiritual life. He explained why it is important for a person who has strong religious beliefs to work with therapists who accept this fact:

[F]or a person who has had a powerful spiritual experience and is seeking ways to maximize that, to continue the good track it has set a person on, I think intuitively they need to be able to have somebody help them sort that through, grow and develop, not somebody who is saying, "Balderdash, I won't pay attention to that."

Underwager testified that IPT is sensitive to a person's religious beliefs, noting: "We can talk the language, not that we endorse it, but we are aware of it."

Catherine Hoeckle, the court-appointed psychologist who evaluated appellant, also testified, ratifying Underwager's testimony. She recommended that appellant be treated at IPT, not only because IPT would be sensitive to appellant's religious beliefs, but also because their treatment staff and services in the area of sexual abuse are excellent.

On August 22, 1986, the court issued the dispositional order denying appellant visitation with the child until further order. The court noted that Catherine Hoeckle had recommended appellant attend and complete his treatment at IPT. The court gave the county attorney's office four days to either accept or reject Hoeckle's recommendation and to make an alternative recommendation if it rejected Hoeckle's recommendation. The court made no findings accompanying this order.

The county attorney's office submitted a letter to the court, rejecting Hoeckle's recommendation on three grounds. First, it noted that its criterion for accepting or rejecting a treatment program is based on recidivism rate reports. The letter indicated that the county attorney's office had reviewed treatment facilities with "experts in the field from different counties and including probation officers," who credited Alpha House, as well as three other facilities, with a low recidivism rate. But because there was no testimony concerning IPT's recidivism rate, the county attorney's office concluded that it had "little information to recommend the program."

Second, the county attorney's office challenged the suggestion that appellant would profit from treatment approaches that were sensitive to his religious beliefs. The letter credited the director of Alpha House with the observation that "sex abuse is not a different crime when done by a Christian then [sic] when done by a non-Christian." The county attorney's office noted that "to protect" appellant's religious views may be hazardous:

[T]his need to protect Curt W.'s religious views may be in conflict with the likelihood of his successful completion [of] the program and not re-offending.

Expanding on the consideration of religion, the county attorney's office contended:

In *A Theoretical Base For A Sex Offender Treatment Program,* [the authors] have identified that a strict religious code turns into religiosity which frequently permeates [the offender's] thinking and is in opposition to the offender developing helpful religious beliefs and a healthy sexual attitude.

Finally, the county attorney's office challenged the therapy technique at IPT. Noting that most professionals consider group therapy essential to effective treatment, the county attorney's office concluded that the four offenders currently in Dr. Underwager's program were "too few" to form a functional group. Although a brochure from IPT suggested that its usual group therapy could not be used if there were too few participants, there was no testimony that group therapy was not used for a group of four or five participants.

The county attorney's office went on to describe Alpha House as one of the most experienced and professionally staffed treatment facilities, having a low recidivism rate and 16 years of experience treating sex offenders. The letter stated that "the primary goal of [Alpha House] is to extinguish or reduce the probability of reoccurring [sic] sexual[ly] inappropriate or deviant behavior," using a variety of therapeutic techniques.

During the August 19 hearing, the court indicated that it would take all proposals under advisement and hold another hearing in 10 days to decide on a dispositional plan for appellant. In fact, there was no other hearing on the matter. Shortly after receiving the letter from the county attorney's office, the court issued its second dispositional order, directing appellant to enter the treatment program at Alpha House. Without explaining the basis for its conclusion, the court rejected the treatment program at IPT as "inappropriate." No findings of fact accompanied the order.

## ISSUES

1. Did the trial court err in not providing appellant an opportunity to respond to the report and recommendation for treatment submitted by the county attorney's office?

2. Is the evidence sufficient to support the trial court's orders suspending appellant's visitation rights and rejecting as inappropriate the treatment program he had requested?

## ANALYSIS

1. Dispositional hearings in juvenile matters are to be conducted in an informal manner "designed to facilitate opportunity for all participants to be heard." Minn.R. P.Juv.Ct. 62.04, subd. 1; *see* Minn.Stat. § 260.155, subd. 1 (1986). In making a disposition, the trial court may consider any report or recommendation or other information which it deems relevant to the disposition, Minn.Stat. § 260.181, subd. 2 (1986), including reliable hearsay and opinions. Minn.R.P.Juv.Ct. 62.04, subd. 2.

 Despite the informality that is permitted under the law, due process requires that juvenile proceedings comport with basic tenets of fundamental fairness. *See McKeiver v. Pennsylvania,* 403 U.S. 528, 543, 91 S.Ct. 1976, 1985, 29 L.Ed.2d 647 (1971); *In re Welfare of Wachlin,* 309 Minn. 370, 373, 245 N.W.2d 183, 185 (1976) (while juvenile proceedings need not be perfect, they must be fair to satisfy due process). Appellant contends that his right to due process was violated when the trial court did not provide him an opportunity to

respond to the recommendation from the county attorney's office. We agree.

■ A parent is entitled to be heard at a dispositional hearing, to offer evidence, and to cross-examine witnesses. Minn.Stat. § 260.155, subd. 6; *see* Minn.R.P.Juv.Ct. 39.02. While trial courts are permitted, and even encouraged, to consider reports and recommendations relevant to a disposition, the Minnesota Supreme Court has cautioned trial courts on the use of such reports within the context of child custody matters:

> We do not condemn the practice of using court agencies to make investigations and reports on custody questions. Where the sole issue is what will best serve the welfare of the child, such reports are an invaluable aid to the court in determining the question. Their use should be encouraged, but care should be taken to give fair notice of the contents of such reports to the parties involved so as to afford them every opportunity to test the credibility of the reporter through cross-examination or otherwise and to meet or answer every adverse fact or inference included therein.

*Stanford v. Stanford,* 266 Minn. 250, 258, 123 N.W.2d 187, 192–93 (1963). *See also Scheibe v. Scheibe,* 308 Minn. 449, 450, 241 N.W.2d 100, 100–01 (1976) (trial court in custody cases must provide parties with "an opportunity to read evaluation reports and to cross-examine the author or otherwise meet or answer adverse facts therein"); *Van Zee v. Van Zee,* 302 Minn. 371, 375, 226 N.W.2d 865, 867 (1974). Although the court's admonition addresses reports used in custody determinations, the due process concerns raised in those cases are equally applicable to reports used at dispositional hearings in juvenile proceedings. *See In re Welfare of G.S.J.,* 281 N.W.2d 511, 513 (Minn.1979) (a statutory right to cross-examine witnesses exists at dispositional hearings, although the form of cross-examination need not be the traditional trial form).

Here, although appellant was notified of the contents of the letter from the county attorney's office, he was permitted no opportunity to respond to the information contained therein. The evidence suggests that the trial court relied exclusively on the statements provided by the county attorney's office in making its disposition. We conclude that it was improper for the trial court to act without conducting a hearing to allow appellant to respond to the recommendation and to cross-examine the person who prepared it. *See Van Zee,* 302 Minn. at 375, 226 N.W.2d at 867.

2. Appellant also contends that the trial court erred in failing to make the requisite findings to support its dispositional orders. Dispositional findings are required by statute. Minnesota Statutes Section 260.191, subd. la (1986) provides in pertinent part:

> Any order for a disposition authorized under this section shall contain written findings of fact to support the disposition ordered, and shall also set forth in writing the following information:
> (a) Why the best interests of the child are served by the disposition ordered;
> (b) What alternative dispositions were considered by the court and why such dispositions were not appropriate in the instant case; * * *.

■ In addition, before a court can deny visitation to a parent, the court must find "that the visitation would act to prevent the achievement of the order's objectives or that it would endanger the child's physical or emotional well-being." *Id.,* subd. 1d. Similarly, Rule 62.05 directs trial courts to make written findings:

> The disposition order made by the court shall contain written findings of fact to support the disposition ordered and shall also set forth in writing the following information:
> (a) a dispositional plan, and
> (b) why the best interests of the child are served by the disposition ordered; and
> (c) what alternative dispositions were recommended to the court and why such recommendations were not ordered.

Minn.R.P.Juv.Ct. 62.05. Particularized findings are necessary for meaningful appellate review. *In re Welfare of L.K.W.,* 372 N.W.2d 392, 401 (Minn.Ct.App.1985);

*In re Welfare of R.A.*, 375 N.W.2d 578, 581 (Minn.Ct.App.1985). Here, neither the court's termination of supervised visitation nor its denial of appellant's requested treatment is accompanied by specific findings.[4]

We have considered the adjudicative findings issued after trial to determine if they support the court's decision to terminate visitation. We find nothing in the findings to suggest any danger of visitation in a supervised setting or to refute Dr. Underwager's later testimony at the dispositional hearing that restoration of the father-child relationship is critical.[5] In fact, on May 14, 1986, when the court adjudicated the child to be dependent and neglected, it granted both parents supervised visitation rights.

In the absence of findings accompanying the dispositional order terminating appellant's visitation with his daughter, we have explored the record to determine whether there is sufficient evidence to support the order. *See, e.g., Brauer v. Brauer,* 384 N.W.2d 595, 597 (Minn.Ct.App.1986) (where the trial court failed to make adequate findings, this court reviewed the record and found sufficient evidence to support the trial court's determination). We have also considered that the trial court had the right and duty to judge the credibility of the witnesses at the dispositional hearings. The record indicates, however, that the court did not discount their testimony. Rather, the record shows that the trial court chose to terminate visitation solely as a means of enforcing its mandate that appellant enter treatment, and not because of any danger to the child from supervised visits. No evidence of record indicates such a hazard. The evidence indicates that supervised visitation should be occurring, and the court candidly acknowledged it is in the best interests of the child for her to have some contact with her father. In sum, nothing in the record shows that supervised visitation would interfere with the court order's objectives or endanger the physical or emotional well-being of the child.

The trial court also concluded that IPT's treatment program was inappropriate and ordered appellant to enter the program at Alpha House. No findings explain why the IPT program chosen by appellant was rejected or why the Alpha House program serves the best interests of the child.

The county argues that the Alpha House treatment program is better for the child because it can bring an end to the suspension of visitation. This fallacious proposition is based solely on an improper condition, and does not speak at all to the differences in the programs.

The only evidence attacking IPT's program is the letter from the county attorney's office which was received and acted upon without permitting appellant to respond. Conclusions in the letter on the prospect for group therapy in the IPT program conflict with the evidence, which indicates this therapy is employed. The letter includes the unsupported suggestion that recognizing and dealing positively with an offender's religious views is counter-productive and inappropriate; this notion is supported by a generalization, potentially discriminatory, regarding a correlation between a "strict religious code" and an unhealthy sexual attitude. The only testimony on this subject shows, to the contrary, that the IPT program is particularly suited to deal with the alleged problem of excessive religious devotion. The record also includes testimony of the psychologist who evaluated appellant, endorsing the staff at IPT and noting the good quality of their treatment in the area of sexual abuse.

The letter's recitation of the goals and qualifications of Alpha House does not assert that their program is comparatively better than any other. In addition, the

---

4. This appeal is from the August 28, 1986, dispositional order directing appellant to enter treatment at Alpha House. This dispositional decision, however, is wholly intertwined with the court's earlier decision to terminate supervised visitation. We review both decisions consistent with Minn.R.Civ.App.P. 103.04.

5. One of the purposes of the child protection laws is to preserve the child's family ties whenever possible. Minn.Stat. § 260.011, subd. 2 (1986).

record includes no evidence that anyone from the county attorney's office is personally acquainted with the Alpha House program and no evidence of any contact between Alpha House personnel and appellant. As the letter notes, the evidence shows that Dr. Underwager established a program for treatment of sex offenders only three years earlier, but there is no evidence comparing the training and experience of staff at IPT and Alpha House.

 The evidence of record supplies us with no identifiable reason for the court's rejection of IPT as appellant's treatment program. To the contrary, the content of the letter from the county attorney's office suggests the danger that the court's decision was influenced by improper considerations. In addition, the trial court's findings are insufficient. No finding was ever made regarding the best interests of the child, and we can discern no relationship between the child's best interests and the court's rejection of appellant's requested treatment. In sum, we find nothing in the record to permit us to affirm the trial court's treatment order.

### DECISION

The trial court erred in failing to allow appellant an opportunity to respond to the information in the letter from the county attorney's office, in suspending appellant's visitation rights and in rejecting his choice of a treatment program without supporting evidence and without explaining its reasons for doing so. The trial court's dispositional decisions are reversed and the matter is remanded for redetermination of a dispositional plan in accordance with matters of law stated in this opinion.

Reversed and remanded.

EDWARD D. MULALLY, Judge (concurring specially):

While I agree that the matter should be remanded to the trial court for further consideration and more complete findings after appellant has had an opportunity to respond to the recommendations of the county attorney's office, I disagree with the majority opinion to the extent that:

1. I do not, under the circumstances apparent at this time, agree that the trial court erred in suspending appellant's visitation rights.

2. The credibility of Dr. Ralph Underwager, Dr. Sharon Satterfield, and Catherine Hoeckle in the field of psychiatry-psychology was and is a matter for determination by the trial court.

3. While the needs and religious convictions of the appellant are a valid consideration, and while the court should give weight to his desires in the matter, the selection of an appropriate treatment program for appellant is a function of the trial court.