MINNEAPOLIS STAR AND TRIBUNE CO., Gannett Broadcasting, Inc., Joint Media Committee of Minnesota, Inc., Midwest Radio and Television, et al., Minnesota Newspaper Association, Inc., Society of Professional Journalists, Petitioners,

v.

Honorable Robert H. SCHUMACHER, Judge of Hennepin County District Court, Bradley A. Wicks, Executor for the Estate of E. Allen Wicks and Janenne M. Wicks, Deceased, Edin F. Stasik, Trustee for the Heirs and Next-Of-Kin of Agnes R. Yakymi, f.k.a. Agnes R. Stasik, decedent, Galaxy Airline Inc., a Florida corporation; Desert Palace Inc., a Nevada corporation; Lockheed Corporation, a California corporation; and Hy Thayer, Catherine Aune, as Trustee for the Heirs and Next-Of-Kin of Gordon G. Aune, decedent, Connie Granfors, as Trustee for the Heirs of Mary Granfors, Deceased; Connie Granfors, as Trustee for the Heirs of Jack Granfors, Deceased, Respondents.

No. C8–86–65.

Court of Appeals of Minnesota.

March 11, 1986.

Review Granted and Stay Extended March 27, 1986.

**324**

Patricia A. Hirl, Minneapolis Star and Tribune, Minneapolis, for Minneapolis Star and Tribune Co.

Leslie J. Anderson, Dorsey & Whitney, Minneapolis, for Gannett Broadcasting, Inc.

Joint Media Committee of Minnesota, Inc., pro se.

Paul R. Hannah, Oppenheimer, Wolff, Foster, Sheard and Donnelly, St. Paul, for Midwest Radio and Television, et al.

Mark R. Anfinson, Minnesota Newspaper Ass'n, Inc., Minneapolis, for Minnesota Newspaper Association, Inc.

Society of Professional Journalists, pro se.

Humbert H. Humphrey, III, Atty. Gen., Catherine Haukedahl, Sp. Asst. Atty. Gen., St. Paul, for Robert H. Schumacher, Judge of Hennepin County District Court.

Eric J. Magnuson, Rider, Bennett, Egan & Arundel, Minneapolis, for Plaintiffs' Liability Committee, and Bradley A. Wicks, Executor for the Estate of E. Allen Wicks and Janenne M. Wicks, Deceased.

Paul E. Godlewski, Barna, Guzy, Merrill, Hynes & Giancola, Ltd., Minneapolis, for Edin F. Stasik, Trustee for the Heirs and Next-Of-Kin of Agnes R. Yakymi, f.k.a. Agnes R. Stasik, decedent.

Boyd H. Ratchye, Doherty, Rumble & Butler, St. Paul, for Galaxy Airline Inc., a Florida corporation; Desert Palace Inc., a Nevada corporation; Lockheed Corporation, a California corporation; and Hy Thayer.

Scott J. Koch, Robert W. Johnson, P.A., St. Paul, for Catherine Aune, as Trustee for the Heirs and Next-Of-Kin of Gordon G. Aune, decedent.

Patrick W. Parmater, Randall, Parmater & Neveaux, Ltd., Wayzata, for Connie Granfors, as Trustee for the Heirs of Mary Granfors, Deceased; Connie Granfors, as Trustee for the Heirs of Jack Granfors, Deceased.

Charles T. Hvass, Jr., Hvass, Weisman & King, Minneapolis, for Plaintiffs' Liability Committee.

Heard, considered and decided by POPOVICH, C.J., and WOZNIAK and SEDGWICK, JJ.

## OPINION

POPOVICH, Chief Judge.

After discussion of completed settlements in open court, the trial court ordered complete files of five wrongful death suits sealed. A motion by Minneapolis Star and Tribune to reconsider sealing was denied. Media representatives now seek a writ of prohibition to prevent enforcement of the orders sealing files. We vacate the orders sealing the files.

### FACTS

This case involves five wrongful death suits filed in Minnesota on behalf of passengers killed in the January 1985 crash of a Galaxy Airlines plane near Reno, Nevada. The parties reached settlements which were discussed in open court. Although no member of the press attended, presumably because they were unaware of the hearing, it is undisputed there was no court order actually closing the hearing to the public and closure had not been requested.

The parties to each of the five suits stipulated to entry of an order of the court sealing the files and all record of the settlements. On September 30, 1985 the trial court ordered the entire file for each case sealed until further court order, pursuant to the parties' stipulations.

A reporter for the Minneapolis Star and Tribune was later denied access to the files. The Minneapolis Star and Tribune then moved the trial court to quash its prior orders sealing the files and for permission to intervene. The Star and Tribune was permitted to intervene, but the motion to quash was denied and the files remained sealed.

The Star and Tribune and other media representatives petitioned for prohibition to obtain access to the files. Briefs were submitted by the parties and oral arguments were held.

## ISSUES

1. Is prohibition an appropriate remedy to review the trial court's sealing of civil files?

2. Did the trial court err by denying access to the files?

## ANALYSIS

1. Respondents argue a petition for prohibition is an inappropriate remedy to review the trial court's action. Respondents suggest a direct appeal from the orders is an adequate remedy. The petition for prohibition has been fully briefed by all parties and oral argument was held before this panel. At oral argument, counsel for respondents were unable to identify any additional matter which would be briefed on direct appeal, which has not already been briefed on this petition for prohibition.

■ Prohibition is the proper remedy to review "orders [which] have the effect of either directly or indirectly interfering with [the media's] functions of collecting or disseminating the news." *Northwest Publications, Inc. v. Anderson*, 259 N.W.2d 254, 256 (Minn.1977) (citations omitted). It is clear petitioners in this case are unable to collect information from the five sealed files and seeking prohibition is the appropriate remedy.

The writ will issue only to prevent the exercise of judicial power in excess of the court's authority, when the exercise of that power will result in injury for which there is no adequate legal remedy. *Hancock-Nelson Mercantile Co. v. Weisman*, 340 N.W.2d 866, 868 (Minn.Ct.App.1983). Although prohibition was traditionally "used to question jurisdiction, in recent cases it has been used to restrain the enforcement of orders entered in abuse of the lower court's discretion." *Id.* at 870. Accordingly, the key issue in this matter is whether the trial court exceeded its authority or abused its discretion by sealing the files.

■ 2. The public's right to inspect and copy judicial records is not absolute. Generally, "the decision as to access is one best left to the sound discretion of the trial courts, a discretion to be exercised in light of the relevant facts and circumstances of the particular case." *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 599, 98 S.Ct. 1306, 1312, 55 L.Ed.2d 570 (1978) (footnote omitted). The reviewing court is "faced with the task of weighing the interests advanced by the parties in light of the public interest and the duty of the courts." *Id.* at 602, 98 S.Ct. at 1314 (footnote omitted). The mere existence of a stipulation by the parties to seal the record does not absolve the trial court, or this court, of the responsibility for weighing these interests. *See Wilson v. American Motors Corp.*, 759 F.2d 1568 (11th Cir.1985) (public access to file of products liability case ordered despite parties' stipulation to seal).

The Minnesota Supreme Court has not yet directly addressed the question of sealing *civil* files, although criminal files in this state may be sealed only if necessary to protect a defendant's right to a fair trial. *Northwest Publications, Inc. v. Anderson*, 259 N.W.2d 254 (Minn.1977).

■ Despite the absence of specific case law, it is clear there is a strong presumption of access to judicial records in Minnesota. In October 1985, the supreme court adopted Interim Rules on Access to Public Records. All recorded information "collected, created, received, maintained, or disseminated by any component of the judicial branch" is presumed to be public unless specifically excepted. Rule 3, subd. 2, Interim Rules on Access to Public Records. The rules contain no exception for confidential settlements. "All public records within the judicial branch shall be open to inspection by any member of the public at all times during the regular office hours

maintained by the custodian of those records." [1] *Id.* Rule 2.

The files involved in this case are all maintained by the clerk of district court and fall within the definition of public records.[2] The benefits of presumed public access to judicial records, protected in Minnesota by the Interim Rules, has also been recognized by the United States Supreme Court. "Public records by their very nature are of interest to those concerned with the administration of government, and a public benefit is performed by the reporting of the true contents of the records by the media." *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 495, 95 S.Ct. 1029, 1046, 43 L.Ed.2d 328 (1975).

In addition to the general presumption of openness applicable to all court files and records, a more specific presumption has applied for more than thirty years to the settlement of wrongful death actions. The trustee of a claim for death by wrongful act must apply to the courts for distribution of money recovered for the claim. Pt. I, Rule 2, Code of Rules for the District Court.[3] By verified petition, the trustee must show the amount received after suit or upon settlement, list all disbursements, the fees of the trustee and his attorney, and the funeral expenses of the deceased, and give information on each heir, including the share to which each is entitled. *Id.* The "petition shall be heard by the court * * * in which the action was pending at the time of settlement" after such notice as required by the court. *Id.* By order, the court will then direct distribution of the money to those entitled to it. *Id.*

The trial court in this matter acknowledged "the strong interest of the press in disseminating information" but concluded "the privacy rights of the individuals involved" outweighed that interest. The court listed the parties' specific "privacy rights" as the right to grieve privately, to avoid harassment, and "to get on with their lives." The trial court further speculated that disclosure of the "settlement agreements could produce thefts, exploitation and improper use, trespass and injury to the plaintiffs."

The trial court was "not unmindful" of the threat by Galaxy Airlines that disclosure of the settlements would "impede further settlements" and foster "protracted litigation." The trial court concluded its docket and the parties who would suffer

---

**1.** If the custodian of records concludes access is not permitted under the Interim Rules, that decision may be appealed in writing to the state court administrator. Rule 7, Interim Rules on Access to Public Records. Although Galaxy would limit the media's remedy to that appeal, the issue in this case is not whether access is permitted by the rules, but the propriety of a court order forbidding access. We doubt the supreme court intended the state court administrator to review court orders.

**2.** Galaxy Airlines argues the settlement agreements are not public, under an exception for "matters that are made inaccessible to the public pursuant to * * * rules promulgated by the Minnesota Supreme Court regarding judicial or administrative proceedings, including but not limited to, rules governing the Lawyers Professional Responsibility Board, the Board of Judicial Standards, and the Board of Continuing Legal Education." Rule 3, subd. 2(r)iii, Interim Rules on Access to Public Records. No rule promulgated by the supreme court requires confidentiality in court approval of wrongful death actions.

Galaxy further argues an exception for records not "filed with the court administrator, admitted into evidence, or otherwise made a part of a civil or criminal case" applies. *Id.* subd. 2(j). Such information is not public if disclosure "would be likely to substantially jeopardize the security of information, possessions, individuals, or property against theft, tampering, improper use, illegal disclosure, trespass, or physical injury." *Id.* This exception is also inapplicable, because the pleadings and settlements were clearly filed and "made a part of" the suits. Finally, Galaxy cites an exception for "other records determined by order of the Supreme Court to be inaccessible to the public." *Id.* subd. 2(s). There is obviously no such order in this case and the files fall within no exception to the definition of public records.

**3.** Rule 2 was adopted in 1952 to guide practitioners in complying with Minn.Stat. § 573.02 (relevant portions of which had been adopted in 1951) which requires courts to determine the share of each heir to any wrongful death recovery. *An Explanation of Rule 2,* Address by Hon. Albin S. Pearson to Minnesota State Bar Association Convention (June 20, 1952), reprinted at 51 M.S.A. 432 (1980).

litigation expenses would benefit from settlement. Although no party apparently claimed to have done so, the trial court found it "conceivably possible that the settling plaintiffs could have made a larger recovery by trial, but chose to take a lesser amount in order to avoid the attendant publicity."

It is troubling that the trial court emphasized the publicity which might be focused on the plaintiffs if the settlement amounts were published. The court cannot prevent the press from publishing information which it obtains, absent a compelling state interest. *Globe Newspaper Co. v. Superior Court,* 457 U.S. 596, 606–07, 102 S.Ct. 2613, 2620, 73 L.Ed.2d 248 (1982). The possibility of causing individuals increased anxiety from publication "does not rise to the level of a compelling state interest justifying a restraint on the publication of information obtained from public records and independent sources." *Minneapolis Star & Tribune Co. v. Schmidt,* 360 N.W.2d 433, 435 (Minn.Ct.App.1985); *see also Minneapolis Star & Tribune Co. v. Lee,* 353 N.W.2d 213 (Minn.Ct.App.1984). The trial court's concerns for the plaintiffs in this case obviously focused on the harassment and loss of "privacy" they might experience if information on the settlements was *published.* Since the court could not restrain publication, it restricted the information itself.

The entire public files of the five wrongful death actions were sealed; not just the settlements. Each file contained pleadings which remained open to the public until the day of settlement. In fact, the settlements themselves were discussed at hearings open to the public. In its memorandum, the trial court implicitly acknowledged the lack of a compelling state interest in protecting the parties' "privacy" sufficient to justify closing the courtroom.

The press had access to all the information involved here. All of these files remained open for inspection up until the settlements. All the settlement agreements were held in open court. The request for sealing came after the discussion and consent of all parties.[4]

Having made public, in open court, the terms and amount of each settlement, and having benefited from settlement rather than trial of the claims, the parties and trial court then sought to make confidential the same information which was previously public. Once information is made public, its dissemination may not constitutionally be restrained. *Smith v. Daily Mail Publishing Co.,* 443 U.S. 97, 103, 99 S.Ct. 2667, 2671, 61 L.Ed.2d 399 (1979). All parties agree the amount of each settlement could have been published if a member of the press had fortuitously been present in the courtroom. Since they were not present, they are limited to gathering information from the files and parties, but the trial court has restricted access to the record of those public proceedings. "A free press cannot be made to rely solely upon the sufferance of government to supply it with information." *Id.* at 104, 99 S.Ct. at 2671.

It is unclear what compelling state interest, absent at the time the settlements were discussed in open court, arose as soon as the same settlements were approved by the court, thereby justifying sealing entire civil files. We are persuaded that facilitation of settlements by "the payment of money to an injured party is simply not 'a compelling governmental interest' legally recognizable or even entitled to consideration in deciding whether or not to seal a

---

**4.** Contrary to the trial court's memorandum, we note the media did not have actual access to the settlement details before sealing. This case therefore does not present the issue of a request for further access by the media. *Cf. Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978) (request to copy audio recordings denied after tapes were played to jury at criminal trial of seven defendants charged in connection with Watergate bur-

glary and transcripts were furnished to media and public attending trial); *In re Application of KSTP Television,* 504 F.Supp. 360 (D.Minn.1980) (media request to copy videotapes of kidnapping and rape victim, made by captor and shown at criminal trial attended by media, denied). Since even the record of the "public" hearings on the settlements was sealed, the public and media in this case are barred from access to the information in all forms.

record." *Wilson v. American Motors Corp.*, 759 F.2d 1568, 1571 n. 4 (11th Cir. 1985).

The trial court's speculation that plaintiffs could be victimized by thieves is insufficient to justify sealing. When considering public access to court files concerning the Hearst Trust, the California Court of Appeal noted that "one of the justifications" for probate court jurisdiction over trusts is protection of beneficiaries.

> If indeed it were *established* that beneficiaries of the Hearst trusts would be placed in serious danger of loss of life or property as a consequence of general public access to the Hearst probate files, then the court would have the power to protect the beneficiaries' interests by *temporarily* denying public access to those files * * *.

*In Re Hearst Estate*, 67 Cal.App.3d 777, 784, 136 Cal.Rptr. 821, 825 (1977) (emphasis added). However, the trial court in this matter made no determination that "serious danger of loss of life or property" had been established, nor did it restrict access only temporarily. Neither had any evidence of any such danger been presented to the trial court.

■ No compelling governmental interest existed to justify barring the public and media from the courtroom when the settlements were discussed, and the court cannot restrict publication, to which the parties actually object. The proffered justifications of permitting the parties to grieve privately, avoiding speculative criminal activity, and encouraging settlement, cannot be characterized as compelling government interests. These factors may exist in all litigation involving large damage claims and awards.

The conclusion here is not to be construed as holding that files can *never* be sealed. Never is too absolute a term. There may be those rare occasions where sealing may be appropriate given the particular facts and dangers presented. This is not one of those instances, given the facts in this matter and the presumption of access embodied in the Interim Rules.

## DECISION

Petitioners properly sought prohibition to obtain relief from orders sealing civil files. The trial court erred by sealing complete wrongful death files when no compelling governmental interest was furthered by sealing and where the court hearing itself had been public.

Orders sealing the files are vacated.

WOZNIAK, Judge (dissenting).

I respectfully dissent.

The Supreme Court has never recognized a first amendment right of access to *civil* judicial proceedings or records. There is, however, a common law right. *Craig v. Harney*, 331 U.S. 367, 374, 67 S.Ct. 1249, 1254, 91 L.Ed. 1546 (1947). This case concerns only the common law right. This right includes the public's right to inspect and copy judicial records, and serves to protect the integrity of the law enforcement and judicial processes. *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 599, 98 S.Ct. 1306, 1312, 55 L.Ed.2d 570 (1978); *United States v. Hubbard*, 650 F.2d 293, 315 (D.C.Cir.1980).

However, this common law right is not absolute. *Nixon*, 435 U.S. at 598, 98 S.Ct. at 1312. All courts have supervisory power over their own records and files. *Id.* Thus, a trial court may, in its discretion, order a file sealed "if the public's right of access is outweighed by competing interests." *In re Knight Publishing Co.*, 743 F.2d 231, 235 (4th Cir.1984).

In *Nixon*, the Supreme Court discussed a number of the exceptions to the right of access:

> [A]ccess has been denied where court files might have become a vehicle for improper purposes. For example, the common law right of inspection has bowed before the power of a court to insure that its records are not "used to gratify private spite or promote public scandal" through the publication of "the painful and sometimes disgusting details of a divorce case." Similarly, courts

have refused to permit their files to serve as reservoirs of libelous statements for press consumption, or as sources of business information that might harm a litigant's competitive standing.

*Nixon*, 435 U.S. at 598, 98 S.Ct. at 1312; *see also In re KSTP Television*, 504 F.Supp. 360, 361 (D.Minn.1980).

Because the issue of limiting access is necessarily fact-bound, there can be no comprehensive formula for decisionmaking. *Nixon*, 435 U.S. at 598–99, 98 S.Ct. at 1312. "[T]he decision as to access is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case." *Id.* In *KSTP Television*, Judge Devitt discussed these principles from *Nixon:*

> The Court there emphasized that the decision as to access to public records is one to be made by the trial court in light of the relevant facts and circumstances of the particular case, *Id.* at 598–99, 98 S.Ct. at 1312. The [Nixon] Court directs us to exercise "an informed discretion ... with a sensitive appreciation of the circumstances," but we are cautioned that exercising our responsibility "does not permit copying on demand." *Id.,* 608, 98 S.Ct. at 1314.

*Id.* at 361.

Thus, the only question on appeal, and the applicable standard of review, is whether the trial court abused its discretion in foreclosing access to the files. *Id.; Wilson v. American Motors Corp.*, 759 F.2d 1568, 1570 (11th Cir.1985).

The majority holds that a "compelling governmental interest" must be shown before files can be sealed.[1] The majority derives this proposition from *Wilson*, 759 F.2d at 1571, which in turn derived the language from *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 606–07, 102 S.Ct. 2613, 2619–20, 73 L.Ed.2d 248 (1982). However, *Globe Newspaper* involved the public's right of access to a *criminal* trial rather than to a *civil* proceeding. As is well-recognized, the application of principles enunciated in the context of criminal proceedings to civil proceedings is highly dubious. In fact, the District of Columbia Circuit has concluded that *Globe Newspaper* and the later criminal case of *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980), do not modify the law for civil proceedings as expressed in *Nixon. Hubbard,* 650 F.2d at 316. Thus, the majority errs in adding the extra hurdle of a "compelling governmental interest."

In my opinion, the trial court adequately considered the relevant facts and circumstances of this particular case and weighed the relative interests of the parties. I would find no abuse of discretion by the trial court in sealing the settlement amounts and terms.[2]

In this case, no valid public purpose can be served by disclosure. Apparently petitioners originally sought access to these files in order to prepare feature articles to be published on the first anniversary of the disaster, which occurred on January 21, 1985. At oral argument, petitioners admitted that the only information they have not had access to is the amount and terms of

---

**1.** The majority makes much of the fact that these settlements were discussed in open court before the records were sealed. It is true that, once the media lawfully obtains information, it cannot constitutionally be restrained. *Smith v. Daily Mail Publishing Co.*, 443 U.S. 97, 105, 99 S.Ct. 2667, 2672, 61 L.Ed.2d 399 (1979); *Oklahoma Publishing Co. v. District Court*, 430 U.S. 308, 97 S.Ct. 1045, 51 L.Ed.2d 355 (1977). Here, however, although the petitioners could have had access to the settlement hearing, they did not attend the hearing. Petitioners did not obtain the information prior to its being sealed and the respondent did not restrain publication of information that was already lawfully in the hands of the press. In short, this is not a "gag order" case.

**2.** I agree with the petitioners that the fact that petitioners did not exhaust their remedies at law, specifically by making a request under the interim rules on access to judicial records, is not dispositive of this case. It is manifestly clear from reading the interim rules that they are not intended to provide for a situation like the one in this case, in which judicial records have been sealed by order of a district court judge.

each settlement agreement. All of the information related to liability is available in the files of the consolidated cases currently pending in Hennepin County.[3]

Disclosure of the amount and terms of each settlement can serve little, if any, public purpose. The petitioners have referred us to *United States v. Criden*, 675 F.2d 550 (3d Cir.1982), *a criminal case*, in which the court listed six societal interests in public access to judicial records. First, public access facilitates educated debate of governmental affairs. Second, public access assures that a judicial proceeding is both fairly conducted and perceived as being so. Third, public access discourages perjury. Fourth, public access enhances the performance of the participants in the judicial proceeding. Fifth, public access prevents partial or biased judicial decision-making. Sixth, public access channels the societal response to a particular event of public interest. With the *possible* exception of number two, none of these societal interests listed in *Criden* apply to the bare dollar amounts of *private* settlement agreements worked out between two litigants.

In *KSTP Television*, two television stations sought release of videotapes which had been made by a kidnapper of himself and his victim. The district court denied the request. In his decision, Judge Devitt stated:

> This additional information, even if of some value, is not the type of information which depicts, criticizes or causes the public to reflect on the workings of society's institutions; it is not the type of information necessary to maintain informed consent for sustaining a free and democratic society.

*KSTP Television*, 504 F.Supp. at 363.

*Wilson*, 759 F.2d 1568, cited by the majority, does not support their position. In *Wilson*, the Eleventh Circuit held that the district court abused its discretion in sealing the trial record in a wrongful death action. In *Wilson*, however, the party seeking access to the record was the plaintiff in another wrongful death action against the same defendant. She sought access to the entire record, including the pleadings, affidavits, depositions, and transcripts, in order to invoke offensive collateral estoppel in her suit. A valid public purpose was thus shown. The court noted "the somewhat unusual circumstances involved" in the case, which actually went to trial and to partial consideration by a jury, before settling. 759 F.2d at 1571.

In contrast to the negligible public interest in disclosure here, the privacy interests of the grieving families in these cases is compelling. They have a right to be left alone. They have a right not to have their tragedy thrust into the public eye without their consent and with no redeeming public purpose except the satisfaction of the public's idle curiosity. They have a right not to have their personal financial affairs splashed across the pages of a newspaper. They have a right to be free from burglary, harassment, and intimidation, instances of which have already been documented in these cases. They have the right, as the trial court put it, "to grieve in private."

The vast majority of settlement agreements in civil cases are reached out of court. Petitioners do not attempt to argue that they should have access to the amounts and terms of out-of-court settlement agreements. They argue, however, that they should have access to the amounts and terms of these settlements because they were arrived at in open court and approved by the court.[4] Presumably, however, the only reason that these private

---

**3.** I note that not only the amount and terms of each settlement, but the entire file in each of these cases, was sealed. As to those materials in the files other than the settlement terms and amounts, I agree with the majority that the trial court abused its discretion in ordering these materials sealed. As to the settlement amounts and terms, however, I would affirm the trial court.

**4.** Counsel for petitioner Midwest Radio and Television asserted at oral argument that, simply by virtue of the fact that these settlements were approved by the court, and because our courts are public institutions, the amounts and

settlement agreements were not arrived at out of court is that the wrongful death statute, Minn.Stat. § 573.02, subd. 1 (1984), and Rule 2, Code of Rules for the District Court, require that settlements in wrongful death actions be approved by the court. The purpose of this rule is to allow the court to order distribution of the recovery in accordance with the proportionate pecuniary loss of the parties entitled to recovery. There is nothing in the wrongful death statute or in Rule 2 to indicate that court approval is required because of some need for public oversight of the settlement process. *See An Explanation of Rule 2,* Address by Hon. Albin Pearson, Minnesota State Bar Association Convention (June 20, 1952), *reprinted at* 51 Minn.Stat.Ann. 432 (West 1980).[5]

Under the facts of this case, the trial court did not abuse its discretion in refusing disclosure of the settlement amounts. No valid public purpose is served by such disclosure. The grieving families have a right to be left alone.

terms of the settlement are per se public information and the media has an unlimited right of access. While the majority here does not adopt this position, I believe it is important to point out that this position flies in the face of the discretionary balancing test standard which the United States Supreme Court has held applies in these cases. *See Nixon,* 435 U.S. at 599, 98 S.Ct. at 1312.

5. Of the 26 cases arising out of the Galaxy Airlines disaster that have settled so far, only these five required court approval. It is difficult to see why the press should have access to the settlement amounts in one group of cases and not the other.