# Denial of Public Access to Trial Exhibits in Child Pornography Prosecutions

Courts may deny public access to exhibits entered into evidence in child pornography prosecutions

February 10, 1994

MEMORANDUM OPINION FOR THE ASSISTANT ATTORNEY GENERAL
CRIMINAL DIVISION

You have asked whether courts may deny public access to exhibits entered into evidence in child pornography prosecutions.[1] Because the privacy interests of the children depicted in such trial exhibits overcome the general presumption in favor of public access to judicial records, we conclude that prosecutors may ask courts to prohibit access to child pornography exhibits, and that courts may enter orders providing this type of relief.

## I. *The Theory Supporting Public Access to Trial Exhibits*

"[T]he courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597 (1978) (footnotes omitted). Moreover, this common law right of access to judicial records does not depend "on a proprietary interest in the document or upon a need for it as evidence in a lawsuit." *Id.* But "the right to inspect and copy judicial records is not absolute. Every court has supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for improper purposes." *Id.* at 598. In this respect, "the decision as to access is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case." *Id.* at 599 (footnote omitted).

While the Supreme Court has acknowledged the common law right of access to court records, the Court has eschewed constitutional theories proffered in support of a more expansive right to inspect court documents.[2] *Nixon*, 435 U.S. at 608-10

---

[1] The right of access afforded to the general public is coterminous with the right of access granted to the press *Pell v. Procunier*, 417 U S 817, 833-34 (1974); *cf. also Nixon v Warner Communications, Inc*, 435 U S. 589, 609 (1978) ("The First Amendment generally grants the press no right to information about a trial superior to that of the general public "). Hence, the term "public access" should be regarded as synonymous with press access.

[2] In discussing access to actual court proceedings, the Supreme Court has consistently distinguished between the Sixth Amendment, which empowers defendants to demand open proceedings in criminal cases, *see, e.g , Waller v. Georgia*, 467 U S 39, 44-47 (1984), and the First Amendment, which grants the press and public the qualified right to attend criminal proceedings even when the defendant wishes to have the proceedings closed *See, e g , Press-Enterprise Co v Superior Court of California*, 478 U.S 1, 7-13 (1986); *Globe Newspaper Co v Superior Court of Norfolk County*, 457 U.S 596, 603-07 (1982) These

(rejecting arguments based on First and Sixth Amendments). With regard to the First Amendment guarantee of freedom of the press, the Court has held that, within the courthouse, "'a reporter's constitutional rights are no greater than those of any other member of the public.'" *Id.* at 609 (quoting *Ester v. Texas*, 381 U.S. 532, 589 (1965) (Harlan, J., concurring)). With respect to the Sixth Amendment right to a public trial, the Court has concluded that this requirement "is satisfied by the opportunity of members of the public and the press to attend the trial and to report what they have observed." *Id.* at 610. Thus, the single rationale supporting public access to trial exhibits flows from the common law right to inspect and copy judicial records. *Id.* at 597; *Valley Broad. Co. v. United States Dist. Court*, 798 F.2d 1289, 1292-93 (9th Cir. 1986).

## II. *Presumptions, Privacy Concerns, and the Balancing Test*

Application of the common law right of access to judicial records and documents requires a balancing of the factors militating for and against public viewing of the records and documents at issue. *Nixon*, 435 U.S. at 602; *United States v. Criden*, 648 F.2d 814, 819 (3d Cir. 1981). The starting point for the balancing test "is the presumption — however gauged — in favor of public access to judicial records." *Nixon*, 435 U.S. at 602; *see also Valley Broad.*, 798 F.2d at 1293 (collecting cases). Because of this presumption, the press and public ordinarily must be allowed to inspect and copy trial exhibits. *Id.*; *Criden*, 648 F.2d at 823. But even when public disclosure has occurred through the admission of evidence at trial, "there are instances where the right to [inspect and] copy evidence already made public has been denied pursuant to the court's power to prevent use of evidence for improper purposes." *Id.* at 825. For example, courts retain the authority to deny public access to court records that might be "'used to gratify private spite or promote public scandal.'" *Nixon*, 435 U.S. at 598. Courts likewise may prohibit public access to trial exhibits that "would result in the great public embarrassment of a third party." *Valley Broad.*, 798 F.2d at 1294 n.7. For this reason, a district court could properly foreclose public access to videotapes made by a defendant prior to raping a kidnap victim, even though the "evidence had been shown in the courtroom," "because further broadcast would support sensationalism, would not serve the public interest, and 'would impinge upon the precious privacy rights of . . . the unfortunate victim of the crime.'" *Criden*, 648 F.2d at 825 (quoting *In re Application of KSTP Television*, 504 F. Supp. 360, 362 (D. Minn. 1980)).

The privacy concerns that can justify denial of public access to trial exhibits are most compelling in the context of child pornography prosecutions. *See Valley Broad.*, 798 F.2d at 1294 (factors weighing against public access to court records include "the likelihood of an improper use, 'including publication of . . . porno-

---

decisions, of course, do not speak to the question of public access to court records and exhibits introduced at trial. *See United States v Beckham*, 789 F 2d 401, 411, 413 (6th Cir. 1986) (contrasting First Amendment right to attend trial and Sixth Amendment right to open proceedings with common law right to inspect and copy public records).

graphic . . . materials'") (quoting *United States v. Criden*, 648 F.2d 814, 830 (3d Cir. 1981) (Weis, J., concurring in part and dissenting in part)). As the Supreme Court has explained, pornographic materials involving children "are a permanent record of the children's participation and the harm to the child is exacerbated by their circulation." *New York v. Ferber*, 458 U.S. 747, 759 (1982). Moreover, distribution of child pornography "violates 'the individual interest in avoiding disclosure of personal matters.'" *Id.* at 759 n.10 (quoting *Whalen v. Roe*, 429 U.S. 589, 599 (1977)). Consequently, children who appear in pornographic pictures and films suffer a personal invasion with each viewing of the material.[3] Indeed, one district court employed precisely this reasoning in denying press access to videotapes depicting relations and conversations between a kidnap victim and the kidnapper who subsequently raped her. *In re Application of KSTP Television*, 504 F. Supp. at 362 ("Release of the tapes for public dissemination would impinge upon the precious privacy rights of Mary Stauffer, the unfortunate victim of the crime."). Because the tapes had previously been shown during the trial of the kidnapper, the district court concluded that "any additional information inherent in the video tape form can serve only to accent the morbid and lurid details of the crime and pander to lascivious curiosity." *Id.* at 363.

The decision in *KSTP Television* has given rise to the settled principle that concern for the privacy of third parties can override the presumption of access to judicial records. *Valley Broad.*, 798 F.2d at 1294 & n.7 (citing *KSTP Television* with approval); *In re Application of National Broad. Co.*, 653 F.2d 609, 619-20 (D.C. Cir. 1981) (same); *Criden*, 648 F.2d at 825 (same). In child pornography prosecutions, this principle rebuts the presumption of public access to trial exhibits. *See id.* (discussing *KSTP Television*); *cf. also Nixon*, 435 U.S. at 598 (noting that "the common-law right of inspection has bowed before the power of a court to insure that its records are not 'used to gratify private spite or promote public scandal' through the publication of 'the painful, and sometimes disgusting, details of a divorce case'") (quoting *In re Caswell*, 29 A. 259, 259 (R.I. 1893)). By interposing concern for the privacy of the children who appear in the pornographic exhibits admitted at trial, the government can defeat common law claims asserted in support of public access to such exhibits, and courts can take action to prevent the public availability of the exhibits.

WALTER DELLINGER
*Assistant Attorney General*
*Office of Legal Counsel*

---

[3] This problem is compounded when the press and public receive permission to copy exhibits in child pornography prosecutions.

> [A] press representative in reporting a trial may adequately inform the general public about a challenged motion picture film by describing it as pornographic. It is not necessary that the film or excerpts be released for use in the evening TV news Indeed, to permit such a showing under the guise of news would only thwart the laws prohibiting exhibition.

*Criden*, 648 F.2d at 831 (Weis, J , concurring in part and dissenting in part)